**David Leslie GIBSON, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., Robert Benson, Peter Flannery, Richard Dressel and Jeffrey Sprung, Defendants.**

**No. 82 Civ. 5249 (RWS).**

United States District Court,
S.D. New York.

Sept. 13, 1990.

Warren J. Bennia, New York City, for plaintiff.

Epstein, Becker & Green, P.C., New York City (Philip M. Berkowitz, Rhonda Moll, Jeffrey Rosen, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiff David Leslie Gibson ("Gibson"), an on air correspondent, seeks damages for discrimination alleged to have been committed by his employer, defendants American Broadcasting Companies, Inc. ("ABC"), its Vice–President Robert Benson ("Benson"), its General Managers Peter Flannery ("Flannery"), Richard Dressel ("Dressel") and Jeffrey Sprung ("Sprung") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 and 28 U.S.C. §§ 2201 and 2202. It is alleged that ABC and the named officers and managers denied Gibson weekends off during his term of employment based upon his race. Upon the findings and conclusions set forth below, which follow upon a three day bench trial, judgment will be entered dismissing the complaint.

*Prior Proceedings*

After reassignments on May 4, 1988 the Honorable Richard J. Daronco, upon ABC's motion for summary judgment, dismissed Gibson's complaint as well as those of his co-plaintiffs Ronald Hope ("Hope") other than Angelo Rios ("Rios"). On February 9, 1989 after a non-jury trial, Rios's complaint was dismissed by this court. On appeal the dismissal as to Rios was affirmed. The dismissals of the complaints of Gibson and

co-plaintiff Ronald O. Hope ("Hope") were reversed and remanded. Upon remand Hope's action was resolved, and Gibson proceeded to trial.

In remanding the case, the Court of Appeals noted that ABC had advanced nondiscriminatory grounds for its actions, namely, Gibson's capacities, but then noted as follows:

> Gibson's affidavit details his 11 years as an on-air correspondent for the contemporary network of ABC Radio News. It notes that he is the only black correspondent and asserts that, save for vacation or compensation days, he has never been scheduled off on a Saturday or Sunday. Gibson claims that none of the caucasian correspondents were similarly scheduled for weekend work and that ABC's response that his performance has consistently been the weakest is pretextual. Appellant states that some employees not scheduled for full weekend work have since had their employment terminated, while he has remained an on-air correspondent continuously for 11 years.

The focus of Gibson's complaint of discrimination spans a 28–month period from September 1, 1980 to December 31, 1982. On appeal, he offers three ABC employees for comparison: Berman, Snow and Myers. Myers is an inapt comparison because Gibson only points to her job performance in 1983–84, not the 1980–82 time period that is the subject of his claim of discrimination. Ms. Snow's situation is not comparable either because she negotiated a contract with ABC Radio News guaranteeing her Saturdays and Sundays off. Berman, the other comparison employee, was not regularly scheduled for a Saturday or Sunday off from September 1982 until February 1983 (when his employment was terminated). If these comparisons were Gibson's only proof of pretext, appellees' motion for summary judgment would have been properly granted. *Cf. Lieberman* [*v. Gant*], 630 F.2d [60] at 67–68 [(2nd Cir.1980)].

But there are two critical unresolved material facts that we believe require a trial. First, Richard Dressel, the News Manager at ABC Radio News who had hired Gibson and was directly responsible for his schedule, admits that from August 1980 through March 1982 every white contemporary network employee was scheduled off on either a Saturday or Sunday. Only Gibson was not so scheduled. Second, though the reason ABC Radio News gives for this differential treatment was because Gibson was consistently the weakest correspondent, it is conceded that the three recited comparison employees were all fired for incompetency and all were employed during the same time frame when appellant was allegedly the weakest employee. The incompetency argument is also undercut by Gibson's assignment to the afternoon drive shift—the prime radio listening time—for a four-month period in 1980. These circumstances create a material issue of fact regarding whether the reason given for Gibson's discriminatory schedule was pretextual. Accordingly, the grant of summary judgment dismissing Gibson's complaint should be reversed and his case should also proceed to a trial on the merits.

A bench trial of these issues was held from April 25 to April 30, 1990. The parties submitted additional authorities in light of *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) on May 7 and 8, at which time the action was considered fully submitted.

## Findings of Fact

### A. The Parties

Gibson is a black male. He graduated from the University of Illinois where he took pre-law courses and graduated. He has been employed since 1976 as an on-air correspondent with ABC Radio News. Throughout his employment with ABC Radio News, Gibson has been assigned to the contemporary radio network. Gibson's compensation, including salary and fees, is currently approximately $99,000 per year, under the current collective bargaining agreement covering his position.

Defendant ABC is a broadcasting company operating radio and television stations and networks. ABC News is a wholly owned subsidiary of ABC and its News Radio is Gibson's employer and a department of ABC News.

Defendant Benson from 1968 to 1974 was employed as News Director of ABC–owned stations. From 1974 until November 1978 Benson was employed by the Associated Press as Managing Editor of the AP Radio Network and as General Executive, AP Broadcast Division. From November 1978 until in or about November 1983, Benson was employed as Vice President, ABC News Radio. From in or about November 1983 to the present, Benson has been employed as Vice President, Senior Executive, ABC Radio Networks, responsible for, *inter alia*, the affiliating of radio stations with the ABC radio networks, and other associated administrative and financial functions. Benson has not had direct responsibility for Gibson's schedule.

Flannery was first employed by ABC from in or about August 1968, as a newswriter for ABC Radio News. From 1973 to 1980 he was the News Manager, American Entertainment Radio Network, and then worked as Assistant Director, ABC News Radio until early 1982 when he became General Manager, News Programming, ABC News Radio. In 1983 Flannery was promoted to Vice President, ABC News Radio in which position he did not have direct responsibility for Gibson's schedule.

Dressel was employed as a regular, full-time newswriter for ABC Radio News in New York from 1962 until 1968 and then Manager, Contemporary Network, ABC News Radio until 1982. From April 1982 to the fall of 1989 Dressel had been employed as Manager, Domestic Assignments, ABC News Radio. He died approximately six months before the trial of this action.

Sprung, at present the News Director of ABC Entertainment Radio Network, was not involved in Gibson's assignments, no evidence was offered against him, and the complaint against him was dismissed at the close of the plaintiff's case without opposition.

### B. *ABC News Radio Broadcasting*

ABC News Radio is a department of ABC News that provides news broadcasts on a contractual basis to radio stations throughout the United States affiliated with ABC's different radio networks. Each of the networks is intended to appeal to demographically different audiences. Throughout the relevant time period of this action until January 1982, ABC Radio News provided news broadcasts to four distinct radio networks: (1) Contemporary, (2) Entertainment, (3) Information, and (4) FM. In January 1982, ABC News Radio added two additional networks as clients—Rock and Direction—making a total of six networks.

The news broadcasts vary in content and style in accordance with the particular network's targeted audience. ABC's different radio networks attempt to gear their sound and approach to news to their particular audiences through story selection, editing, writing, and the voices of their correspondents. The contemporary network for which Gibson worked is targeted from those from teenage to thirty years of age.

ABC News Radio on-air news correspondents provide the voice for news broadcasts and write stories with materials provided by others involved in the newsgathering process. Generally, correspondents work exclusively for one radio network. ABC's contemporary network seeks to provide its listeners with news broadcasts that are upbeat, written in simple, declarative terms, emphasizing stories of interest to its target audience.

Each weekday on the contemporary network is divided into five shifts: (1) morning drive, (2) midday, (3) afternoon drive, (4) evening, and (5) overnight. During each particular shift, newscasts occur in segments ranging from one to three and one half minutes, and are broadcast beginning at eight minutes before the hour. The correspondent assigned to the shift is responsible for, among other things, reading the news broadcasts which occur during that shift.

The weekday morning drive and afternoon drive shifts—considered the "prime time" of radio listening—take place when people are commuting to and from work, and thus reach the largest audiences. The five weekday shifts are denominated as follows:

1. Morning Drive: 6:52 a.m. to 10:52 a.m. newscasts.
2. Midday: 11:52 a.m. to 3:52 p.m. newscasts.
3. Afternoon Drive: 4:52 p.m. to 8:52 p.m. newscasts.
4. Evening: 9:52 p.m. to 12:52 a.m. newscasts.
5. Overnight: 1:52 a.m. to 5:52 a.m. newscasts.

Correspondents are expected to report for their shifts at least two hours before their first scheduled newscast. Weekend news broadcasts also occur in segments at eight minutes before the hour during five different shifts, but the listening audience is generally smaller on weekends than during the week, and there are no periods denominated "morning drive" or "afternoon drive." In addition to being generally smaller on weekends, the listening audience for contemporary network news broadcasts is generally smaller during the evening and overnight hours than during the day. Throughout the relevant time period of this lawsuit, until November 18, 1984, the newscasts on Sundays did not begin until late morning.

Performance of correspondents on the contemporary network involves at least three factors: (1) story delivery; (2) writing ability; and (3) editorial judgment. Seniority is not and has not been a factor in determining a correspondent's schedule throughout the relevant time period of this lawsuit, although the correspondents are members of a collective bargaining unit.

### C. Gibson's Contracts of Employment at ABC Radio News

Gibson was hired by Dressel in November 1976 while Gibson was employed as an on-air radio correspondent with the Mutual Broadcasting System in Washington. Gibson signed a three-year contract of employment with ABC which contained no schedule undertakings, the schedule not having been the subject of negotiation.

In November 1979, Gibson signed another three-year employment contract with ABC. Gibson had an opportunity to consult with counsel prior to signing his contract. According to Gibson he sought to include schedule commitments in the contract and ABC refused. Gibson signed the renewal and did so again in 1982 under similar circumstances. Neither contract contained provisions relating to scheduling. ABC Radio News ordinarily does not include scheduling provisions in such contracts, preferring to preserve its discretion to schedule its correspondents in the manner which, in its business judgment, best suits its needs. In April 1980, however, ABC Radio News entered into a negotiated contract with Leida Snow, a caucasian female correspondent assigned to the contemporary radio network, pursuant to which Snow was guaranteed off Saturdays and Sundays. Snow's contract was not renewed when it expired in December 1983 as a result of ABC's dissatisfaction with her job performance as well as her contract demands. Throughout the period that Gibson has been employed by ABC, no correspondent assigned to the contemporary network other than Snow has had a contract specifying the dates or hours which he or she would work.

### D. Work Schedule Assignments of Gibson and Other ABC Radio News Employees

From 1976 until April 1982 Dressel directly supervised Gibson and determined his schedule. He assigned Gibson to shifts which required him to work Saturdays and Sundays, the days on which the audience for the contemporary network is generally smallest. Three or four people are scheduled to work weekends on the contemporary network. Robert Coker, Risa Jill Miller, Michael Dewey, and Jeanette Kerr, all caucasians, worked shifts which required them also to work weekends from time to time throughout the time that they were assigned to the contemporary network. During the period in question, although these caucasian correspon-

dents were regularly given weekend assignments, Gibson was the only correspondent who did not have some weekend time off, alternating weekend and compensatory time. Another black man, Mike Allen, worked as a free-lance, part-time correspondent on the contemporary network from March 1981 until November 1981. He always had weekends off while he was so employed.

Gibson first brought his scheduling concerns to Dressel's attention on or about August 27, 1980. Gibson wrote in a memorandum to Dressel that he felt that he should obtain a Monday–Friday afternoon drive shift made available by the departure of Martin Giles, a caucasian correspondent. Dressel decided that Mary Margaret Myers ("Myers"), another caucasian correspondent, and not Gibson, should receive that shift, based on Dressel's assessment of the various contemporary network correspondents' performance. Following his August 1980 memo, Gibson did not discuss this issue further with Dressel. Gibson has stated that as of August 1980 he had no reason to believe that Dressel was singling him out for unfair treatment.

On November 17, 1980, Gibson sent Dressel a memorandum in which he referred to other correspondents in the contemporary network who, in addition to himself, were "dumped on" as a result of allegedly unfair schedule changes, which resulted in inconvenience to the other correspondents. The other correspondents to whom Gibson was referring in this memorandum were Keeve Berman, Bob Hardt, and Bill Stoller, all of whom are caucasian. By memorandum, Dressel invited Gibson to make an appointment and discuss this matter with him, but Gibson did not. Gibson then requested, and Dressel granted, several "comp" days off, and permitted him to schedule his vacation during Christmas and the New Year, which Dressel generally did not permit.

In January 1981, Gibson's schedule was changed for the worse by being scheduled to work shifts later in the evening. In April 1981 Gibson prepared a memo for his own personal use in which he described some of the practices he felt were discriminatory but noted he had never sought a morning drive assignment. In August 1981 Gibson and certain other minority employees of ABC wrote to Roone Arledge, then President of ABC, alleging race discrimination.

Gibson also filed that August an individual charge of employment discrimination against ABC with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("SDHR"), alleging that ABC unlawfully discriminated against him on the basis of his race by failing to schedule him for Saturdays and Sundays off. Gibson named no individual respondents in the charge. On May 11, 1982, the EEOC issued to Gibson a right-to-sue letter at his request, and the instant lawsuit was filed on August 9, 1982 with Hope and Rios as co-plaintiffs.

Since November 1984, the only two correspondents on the contemporary network who have had regularly scheduled weekends off have been the correspondents who work the "morning drive" and "afternoon drive" shifts, Gil Fox and Bob Hardt. The four remaining correspondents on the contemporary network, Myers (recently replaced by Lynda Moore), Jeanette Kerr, Dave Barrett and Gibson, have schedules which require working every Saturday and Sunday except for vacation and "comp" days. Myers, Moore, Kerr and Barrett are caucasian. Gibson is the only contemporary correspondent who has had regularly scheduled days off every Thursday and Friday.

### E. Gibson's Job Performance

During the period from Gibson's hiring in 1976 through 1982, Dressel evaluated Gibson's performance critically, commenting on his preparation and performance. Merrilee Cox, who is not a defendant in this action, replaced Dressel as News Director of the contemporary network on or about April 2, 1982. She then assumed responsibility for assigning Gibson's schedule, a responsibility that has continued to date. Cox's opinion of Gibson's performance is consistent with Dressel's evaluation that

Gibson has been one of the weakest of the contemporary network correspondents.

Gibson's job performance also was the subject of memoranda from colleagues with whom he works. In the Spring of 1979, ABC received criticism from affiliate stations concerning Gibson's on-air performance, stating that he did not sound "bright" or "contemporary." On May 8, 1983, Leslie Eisenberg, a newswriter with ABC Radio News, sent a memorandum to Cox in which Eisenberg complained that her working relationship with Gibson was deteriorating.

In December 1983, Joseph Ferullo, another newswriter with ABC News Radio, sent a memorandum to Cox in which Ferullo complained that Gibson was "unsuitable", that Gibson "loves to write his newscasts with seconds to spare", and that as a result, "when news happens, he can't cope." Brij Lal, a newswriter with ABC Radio News, complained about Gibson's tardiness.

In various conversations and memoranda between Cox and Gibson from April 1982 to the present, Cox has told Gibson that his voice sounds tired and that his presentation is lazy. On or about July 13, 1983, Gibson wrote Cox a memorandum in which he complained that Cox had been "stacking [his] file with nothing but bad reviews ever since [Cox] arrived." Cox responded by pointing out that preparing critiques of Gibson's work and the work of other correspondents was her job.

Gibson is well educated, soft-spoken and deliberate in his delivery. Gibson's speech does not identify him either as to race or region. His manner of speech contrasted with other of the correspondents who testified, namely, Dean Warren Schumberg and Robert Baskin, whose speech patterns were more emphatic, approaching the theatrical.

All correspondents had an opportunity for assignment to the drive portions of the broadcasts. No testimony established that Gibson's performance on the occasions he worked on drive shift altered his superiors' evaluations of him.

## F. *Pretextuality*

Dressel specifically excluded race as a grounds for his scheduling determinations. He stated his belief that Gibson's success would redound to his (Dressel's) benefit since Dressel had initially hired Gibson. After four years of employment, including scheduling by Dressel, as of 1980 Gibson considered Dressel to be "fair." Dressel explained his assignments as the result of his evaluation of Gibson's performance and the policy of using the weakest correspondents for the least listened to shifts. The reasons assigned to the scheduling of assignments were not pretextual on Dressel's part.

It is true that three caucasian correspondents, Myers, Keeve Berman and Leida Snow were, unlike Gibson, not given regular weekend assignments between 1980 and 1982. Snow, as noted, was successful in negotiating a contract which precluded ABC from assigning her to weekend shifts. Gibson has failed to establish comparability as to Snow at the time of contracting and difference in color alone between the two individuals fails to establish discrimination resulting from the contracts awarded. Myers' favorable scheduling arose because at the outset she was highly regarded. Later she was beset by what was characterized as personal problems and her evaluation changed. Her attendance became unsatisfactory and she was discharged. Berman, while well-regarded in his initial assignments, was later considered to have an inappropriate "sound" for the targeted audience. His discharge was also based on individual reasons.

For those reasons, an inference that the failure to assign Snow, Berman and Myers to regular weekend duty resulted from their race is unwarranted. Many caucasian correspondents received weekend assignments between 1980 and 1982, and only those correspondents who were initially regarded highly and/or who regularly worked drive shifts were excluded from weekend assignments. In sum, while the continued assignment of Gibson to weekend duty may well have been unfair in terms of seniority and equitable assign-

ment of an unpleasant duty, the record does not establish that this or other scheduling decisions were based on race as opposed to the network's business determinations.

*Conclusions*

(1) Under *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the § 1981 claim is dismissed. For the reasons set forth in the Honorable William C. Conner's opinion in *Long v. AT & T Information Systems,* 733 F.Supp. 188 (S.D.N.Y.1990), *Patterson* requires dismissal of a § 1981 claim founded upon discrimination if such conduct occurred post formation of the employment contract for the position in question, and the plaintiff's terms of employment have not been so substantially altered as to establish a "new and distinct relation." *Patterson,* 109 S.Ct. at 2377. Here, the alleged discrimination in scheduling occurred after Gibson's hiring and did not alter his legal employment status.

(2) The facts establish that ABC's explanation of the practice here complained of was not pretextual. Its affirmative defense having been established, the complaint is dismissed.

It is so ordered.